IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT DRAIN,                              )
                                           )
    Plaintiff,                        )
                                           )
    v.                                )
                                           )    No. 06 C 0054
ERIC I. KEYES, HENRY HARRIS, TONY D.       )
DE BOIS, HARLEN LEWIS, ANTIONE             )
ANDERSON, VINCENT SIMS, and CITY OF        )
HARVEY,                                    )
    Defendants.                       )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Robert Drain filed the present five-count Amended Complaint alleging claims of false arrest (Count I), failure to intervene (Count II), unreasonable search (Count III), and violations of due process (Count IV), *see* 42 U.S.C. § 1983, as well as a common law claim of malicious prosecution (Count V) against Defendant Police Officers Eric Keyes, Henry Harris, Tony DeBois, Harlen Lewis, Antione Anderson, Vincent Sims, and the City of Harvey. Before the Court is Defendants' Joint Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part Defendants' summary judgment motion. Specifically, the Court grants Defendants' motion as to Count V of the Amended Complaint and dismisses Defendants Harris, DeBois, Lewis, Anderson, and Sims from Counts I and IV.

## BACKGROUND

### I.    Northern District of Illinois Local Rule 56.1 Statements

When determining summary judgment motions, the Court derives the background facts

from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials. *See id.; Ammons,* 368 F.3d at 817.

A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. In addition, the Court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Id.* at 529. Finally, the Court may disregard statements and responses that do not cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). With these principles in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Parties

On October 12, 2004, Plaintiff Robert Drain was visiting a friend at 15815 Lexington, Apartment 2, in Harvey, Illinois when Harvey police officers arrested him for knowingly possessing a controlled substance with the intent to deliver.  (R. 76-1, Defs.' Joint Rule 56.1 Stmt. Facts ¶¶ 9, 60, 63; R. 112-1, Pl.'s Stmt. Add'l Facts ¶ 1.)  The police officers involved included Defendant Eric Keyes, a Detective with the City of Harvey Police Department.  (Defs.' Stmt. Facts ¶ 5.)  At the time of the arrest, Detective Keyes had been a police officer for eight years and was a member of the Special Operations Unit which handles narcotic-related cases. (R. 76-13, Defs.' Ex. L, October 12, 2004, Search Warrant.)  The other police officers present at Drain's arrest were Deputy Marshal Antione Anderson, Detective Tony DeBois, Detective Henry Harris, Deputy Marshal Harlen Lewis, and Officer Vincent Sims.  (Defs.' Stmt. Facts ¶¶ 1, 2, 3, 4, 6.)  Harvey Police Detective Timothy Parker – who is not a Defendant in this lawsuit – was also present at Drain's arrest.  (*Id.* ¶ 7.)

### B.     Investigation

On September 5, 2004, Keyes initiated an investigation regarding the sale of narcotics at 15815 Lexington, Apartment 2, Harvey, Illinois.  (*Id.* ¶ 11.)  On October 10, 2004, a confidential informant told Keyes that narcotics were being sold at 15815 Lexington, Apartment 2.[1]  (*Id.* ¶

---

[1]  Drain argues that information the confidential informant provided to Keyes is inadmissible hearsay.  *See* Fed.R.Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7ᵗʰ Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").  The information that the confidential informant provided Keyes, however, is not admissible for the truth of the matter, but rather to demonstrate what actions

12.)  On that same day, Keyes and the confidential informant conducted a controlled buy at 15815 Lexington, Apartment 2.  (*Id.* ¶ 13.)  Keyes observed the confidential informant enter the apartment, after which the confidential informant left the apartment and handed Keyes the narcotics that he had purchased.  (*Id.* ¶¶ 14, 15.)  The confidential informant told Keyes that he had purchased the narcotics from a person named "Sam."  (*Id.* ¶ 16.)  On October 11, 2004, Keyes conducted another controlled buy and surveillance at 15815 Lexington, Apartment 2.  (*Id.* ¶ 17.)  On that date, the confidential informant returned to the apartment and purchased narcotics from an individual named "Sam."  (*Id.* ¶ 18.)  Keyes determined that the individual the confidential informant referred to as "Sam" was Theddis Louie.  (*Id.* ¶ 19.)

### C.    Search Warrant & Arrests

Thereafter, Keyes prepared a search warrant and on October 12, 2004, at 12:46 p.m., Cook County Judge Martin E. McDonough issued a search warrant for "'John Doe' male black subject a.k.a. 'Sam' (6' 03", 215 lbs.), of 15815 Lexington, Apt. #2, Harvey, IL Cook County, Illinois."  (*Id.* ¶¶ 20, 21.)  That same day, Keyes supervised and directed the execution of the search warrant for Apartment 2 at 15815 Lexington.  (*Id.* ¶ 22.)  Prior to the execution of the search warrant, Keyes assembled Harvey Police Officers Anderson, DeBois, Harris, Lewis, Parker, and Sims at the Harvey Police Station for a meeting.  (*Id.* ¶ 23.)  At that meeting, Keyes informed the other officers that the target of the search warrant was an individual known as "Sam" and that the subject premises were 15815 Lexington, Apartment 2, Harvey, Illinois.  (*Id.* ¶ 24.)  Keyes also informed the other officers that there would be two "take down" teams, the

---

Keyes took based on this information, including what motivated Keyes' probable cause determination.  *See Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (probable cause may be founded on information from informants).

purpose of which was to secure the target location and gain entry to search for contraband. (*Id.* ¶¶ 25, 26.) In addition, Keyes assigned each officer his role for the execution of the search warrant. (*Id.* ¶ 27.) Specifically, Keyes assigned himself, Anderson, and Parker to the front door; Sims, Harris, and DeBois to the back door; and Lewis to secure the perimeter. (*Id.* ¶¶ 28, 29, 30.) At the conclusion of the meeting, the police officers proceeded to 15815 Lexington, Apartment 2. (*Id.* ¶ 31.)

While executing the search warrant, the police officers wanted to maintain the officers' safety and preserve any drug evidence. (*Id.* ¶ 35.) When the police officers entered the apartment, they ordered the individuals inside the apartment to get on the floor, including Theddis Louie and Robert Drain. (*Id.* ¶¶ 39, 40.) Two women, Rachiel Ridgner and Patricia Johnson, a teenaged girl, Tymoneshia Williams, and several children were also in the apartment. (*Id.* ¶ 41.) During the execution of the search warrant, the police officers patted down Drain, examined his mouth, and removed and examined his shoes. (*Id.* ¶ 42.) Drain had no controlled substances on his person. (Pl.'s Stmt. Facts ¶ 10.) Meanwhile, Drain contends that three of the police officers strip-searched him, although he does not know which Defendant officers conducted the strip-search. (*Id.* ¶ 15.) During their search, the police found cocaine hidden in a pillow or pillowcase in the bedroom of the apartment. (*Id.* ¶ 11; Defs.' Stmt. Facts ¶ 54.) The police also found cocaine in a paper bag hidden in a rain gutter above the front door of the apartment. (Pl.'s Stmt. Facts ¶ 12; Defs.' Stmt. Facts ¶ 55.)

Keyes arrested Drain while they were still at the apartment. (Defs.' Stmt. Facts ¶ 59.) Keyes informed Drain and Louie that they were under arrest and read them their *Miranda* rights. (*Id.* ¶ 60.) Other than Keyes, no other member of the Harvey Police Department was involved in

the decision to arrest Drain.[2]  (*Id*. ¶ 61.)  At the conclusion of the search, the police transported

Drain and Louie to the Harvey Police Station.  (*Id.* ¶ 62.)  On October 13, 2004, Keyes drafted

the police incident report describing the execution of the search warrant for 15815 Lexington,

Apartment 2, Harvey, Illinois that took place on October 12, 2004.  (*Id.* ¶ 63.)

>    **D.**    **Criminal Proceedings**

On November 17, 2004, Keyes testified at a preliminary hearing before Cook County

Judge Thomas Condon.  (*Id.* ¶ 67.)  At the preliminary hearing, Keyes testified about the events

on October 12, 2004.  (*Id*. ¶ 68.)  Specifically, Keyes testified that he had gone to 15815

Lexington, Apartment 2, in Harvey, Illinois to execute a search warrant.  (*Id*.)  Also, Keyes

testified that he had found cocaine in the rain gutter above the front door and in the bedroom of

the apartment.  (*Id.* ¶ 69.)  Judge Condon found that probable cause existed for the arrest of

Robert Drain and Theddis Louie.  (*Id.* ¶ 70.)

After being subpoenaed for Drain's case, Detective Timothy Parker, who was present at

the execution of the search warrant, told a Cook County Assistant States' Attorney and Public

Defender that Keyes had lied when he testified at the preliminary hearing.  (Pl.'s Stmt. Facts ¶

16.)  More specifically, Parker stated that Keyes lied that there had been surveillance of 15815

Lexington, Apartment 2, just prior to the execution of the search warrant on October 12, 2004,

that Drain had been involved in a hand-to-hand drug transaction, and that Drain ran into the

apartment when the Harvey police arrived.  (*Id.* ¶ 17.)

------

[2]  Although Drain denies this statement, he fails to cite to the record in his response, and thus the Court admits Defendants' statement as true.  *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

On November 22, 2004, Drain and Louie were charged with unlawful possession with intent to deliver and unlawful possession of a controlled substance in Cook County Case No. 04 C6 61269, *People v. Theddeis Louie & Robert Drain*. (Defs.' Stmt. Facts ¶ 71.) Cook County Assistant States' Attorney Cordelia Coppleson was one of the States' Attorneys assigned to *People v. Robert Drain,* and her supervisors eventually permitted her to *nolle prosequi* the case. (*Id.* ¶¶ 72, 73; Pl.'s Stmt. Facts ¶ 18.) Specifically, Coppleson averred that following her evaluation of Drain's case, it was her belief that the State could not sustain its burden of proving the case against Drain beyond a reasonable doubt.[3] (*Id.* ¶ 73.) Coppleson further averred that her decision to *nolle prosequi* Drain's case did not reflect an opinion that Drain was innocent. (*Id.*) On September 21, 2005, Assistant States' Attorney Alzetta Bozeman-Martin appeared before Cook County Judge Reginald Baker and moved to *nolle prosequi* Case No. 04 C6 61269 against Drain, and the judge granted the State's motion. (Defs.' Stmt. Facts ¶¶ 75, 76.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[3] Drain denies Defendants' statement based on the deposition testimony of Detective Timothy Parker. The cited deposition testimony that Drain relies upon, however, does not refute the fact that Coppleson decided to *nolle prosequi* the case against Drain because she believed the State could not sustain its burden of proving the case beyond reasonable doubt. Instead, Parker testified that Keyes had lied when he testified at the preliminary hearing. (*See* Pl.'s Stmt. Facts ¶ 16.) Also, Parker testified that the Public Defender told Parker that the Assistant States' Attorney thought Parker would be a good witness. (*Id.* ¶ 18, Ex. F, Parker Dep. at 68-69.) Parker's testimony concerning what the Assistant States' Attorney told the Public Defender contains two levels of hearsay for which Drain fails to offer any hearsay exceptions. More importantly, Parker's testimony does not refute the Assistant States' Attorney's reasoning behind her decision to *nolle prosequi* the case against Drain. Because Drain's denial based on Parker's testimony does not establish a genuine dispute for trial, the Court admits Defendants' statement as true. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527-28 (7th Cir. 2000).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed.R.Civ.P. 56(e)).

## ANALYSIS

### I.      Counts I – False Arrest

In Count I of the Amended Complaint, Drain brings a false arrest claim pursuant to the Fourth Amendment made applicable to the states by virtue of the Fourteenth Amendment. (R. 55-1, Amend. Compl. ¶¶ 20, 21.) The existence of probable cause to arrest precludes a Fourth Amendment claim for false arrest. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 762 (7th Cir. 2006); *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003). The Court thus turns to the legal basis for Drain's arrest.

#### A.      Probable Cause Standard

Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed,* 443 F.3d 600, 603

(7th Cir. 2006). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Washington v. Haupert,* 481 F.3d 543, 547 (7th Cir. 2007); *see also Gates,* 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules"). When "determining whether suspicious circumstances rise to the level of probable cause, officers are entitled to draw reasonable inferences based on their training and experience." *Reed,* 443 F.3d at 603; *United States v. Parra,* 402 F.3d 752, 765 (7th Cir. 2005) (experience in narcotics enforcement relevant to informed probable cause assessment). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches,* 327 F.3d 582, 586 (7th Cir. 2003) (citation omitted); *see also Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

### B.     Relevant Illinois Criminal Statute

Whether Keyes had probable cause to arrest Drain necessarily depends on the applicable Illinois criminal statute for knowingly possessing a controlled substance with intent to deliver, 720 ILCS 570/401(a)(2). *See Pourghoraishi,* 449 F.3d at 761. The elements of knowingly possessing a controlled substance with the intent to deliver under the Illinois statute include: (1) the defendant had knowledge of the presence of a controlled substance; (2) the controlled

substance was in the immediate possession or control of the defendant; and (3) the defendant intended to deliver the controlled substance. *People v. Moore,* 365 Ill.App.3d 53, 58, 301 Ill.Dec. 819, 847 N.E.2d 829 (Ill. 2006). "Possession may be either actual or constructive; actual possession is established by proof that the defendant exercised some sort of present personal dominion over the substance, such as concealing or attempting to dispose of it, whereas constructive possession requires a showing that he had both the intent and capability to maintain control over the substance." *Black v. Rodriguez,* No. 01 C 1721, 2002 WL 31045390, at *2 (N.D. Ill. Sept. 11, 2002) (citing *People v. Brown,* 277 Ill.App.3d 989, 997, 214 Ill.Dec. 679, 661 N.E.2d 533 (Ill. 1996)).

## C.     Probable Cause Determination

Based on the information that Keyes knew at the time of Drain's arrest – in tandem with his experience in narcotic-related cases – there are genuine issues of material fact that preclude the Court from finding that Keyes had probable cause to arrest Drain for knowingly possessing a controlled substance with intent to deliver. Although the record reveals that Keyes was a member of the Special Operations Unit that handles narcotic-related incidents and that he initiated an investigation regarding the sale of narcotics at 15815 Lexington, Apartment 2, Harvey, Illinois, other evidence in the record does not link Drain to the drug activity involved at 15815 Lexington, Apartment 2. A confidential informant, for example, told Keyes of the sale of narcotics at the apartment after which the confidential informant purchased narcotics at the apartment from "Sam" on at least two separate occasions. The facts, however, reveal that Keyes determined that "Sam" was Theddis Louie and not Robert Drain. Further, when the police officers executed the search warrant at the apartment, they did not find any narcotics on Drain's

10

person, although they found narcotics hidden in another room and in the rain gutter. Defendants also have not presented any uncontested evidence linking Drain to the apartment, other than his presence at the time of the search. The record before the Court is devoid of any evidence that Drain resided at the apartment or even visited the apartment other than on October 12, 2004.

Moreover, Drain's proximity to the drug activity, without more, cannot give rise to probable cause. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, police officers had a warrant to search a bar, and a bartender named "Greg," for narcotics. *Id.* at 90. The police also searched and arrested a bar patron even though there was no particularized reason or authorization to do so. *See id.* The Supreme Court concluded that the police did not have probable cause to arrest the bar patron because he did nothing to arouse suspicion that he was committing a crime. *Id.* at 90-91. The *Ybarra* Court consequently held that a person's mere proximity to criminal activity – without more – cannot establish probable cause. *Id.* ("a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause"). Although Drain's proximity to the drug activity is not irrelevant, *see United States v. Carpenter,* 342 F.3d 812, 815 (7th Cir. 2003), Defendants have not fulfilled their burden of establishing that Keyes had probable cause to arrest Drain as a matter of law.[4]

---

[4] Drain also contends that Keyes did not have probable cause to arrest him because Detective Parker testified that Keyes lied at the preliminary hearing which was held over a month after Drain's arrest. Although there are genuine issues of material fact whether Keyes lied to the Cook County Judge on November 17, 2004, the Court must look to what Keyes reasonably believed in light of the facts and circumstances within his knowledge at the time he arrested Drain. *See Washington v. Haupert,* 481 F.3d 543, 547 (7th Cir. 2007). As such, whether Keyes lied at the preliminary hearing over a month after Drain's arrest is not relevant to the Court's probable cause determination. *See Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("To determine whether an officer had probable cause to

Viewing the evidence in a light most favorable to Drain – as the Court is required to do at this procedural posture – there are genuine issues of material whether Keyes had probable cause to arrest Drain. *See Reed,* 443 F.3d at 603. Therefore, the Court denies Defendants' summary judgment motion as to Drain's false arrest claim against Keyes. Nonetheless, because Keyes was the only officer involved in the decision to arrest Drain, the Court dismisses Defendants Harris, DeBois, Lewis, Anderson, and Sims from Count I of the Amended Complaint because Drain has failed to set forth evidence creating a genuine issue of material fact that these officers directly participated or caused the alleged constitutional violation concerning his arrest. *See Hildebrandt v. Illinois Dep't of Natural Res.,* 347 F.3d 1014, 1039 (7th Cir. 2003) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (citation omitted).

## II.     Count II – Failure to Intervene

In Count II of his Amended Complaint, Drain alleges that the individual officers knew that Keyes was unjustifiably arresting him and that the officers had a reasonable opportunity to prevent the arrest from occurring. (Amend. Compl. ¶¶ 23, 24, 25.) "For liability to attach to an officer's failure to intervene, that officer must have (1) had reason to know that a citizen was unjustifiably arrested, and (2) had a realistic opportunity to intervene to prevent that harm from occurring." *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1019 (7th Cir. 2006); *see also Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

arrest an individual, [courts] examine the events leading up to the arrest.").

Because there are genuine issues of material fact that preclude the Court from finding that Keyes had probable cause to arrest Drain as a matter of law, the Court turns to the second *Sornberger* requirement.

Here, Defendants contend that because each officer had an assigned duty to perform during the execution of the search warrant and that the officers' knowledge was limited to these assigned duties, the police officers never had a realistic opportunity to intervene on Drain's behalf.  Although the facts reflect that the police officers had certain tasks to perform during the execution of the search warrant, the Court must view the evidence and all reasonable inferences in a light most favorable to Drain.  The Court cannot take the inferential leap Defendants suggest, namely, that because the police officers had individualized duties during the execution of the search warrant, they did not have the opportunity to intervene in Drain's arrest.  *See Gillespie v. Equifax Info. Servs., L.L.C.,* 484 F.3d 938, 940 (7th Cir. 2007) ("all justifiable inferences must be drawn in the nonmovant's favor").  Accordingly, Defendants have failed in their burden of establishing the lack of any genuine issue of material fact concerning Drain's failure to intervene claim.  *See Celotex Corp.*, 477 U.S. at 323.  Therefore, the Court denies Defendants' motion as to Count II of the Amended Complaint.[5]

### III.    Count III – Unreasonable Search

In Count III of the Amended Complaint, Drain alleges that certain Defendant police officers strip-searched him on October 12, 2004 and that this strip-search was not based on legal

---

[5] In his response brief, Drain also argues that the police officers failed to intervene regarding the alleged strip-search as discussed under Count III.  Drain, however, did not bring a claim for failure to intervene based on the alleged unreasonable search in his Amended Complaint, and thus the Court need not address this new Fourth Amendment claim.

cause.  (Amend. Compl. ¶¶ 27, 28.)  In their summary judgment motion, Defendants contend that because Anderson, DeBois, Harris, Lewis, and Sims did not search Drain, they are entitled to summary judgment as to Drain's unreasonable search claim.  Drain counters Defendants' argument by asserting that all of the officers are liable based on the tort principle of joint liability.  Drain's argument is misplaced because for an individual to be liable under Section 1983, he or she must have caused or participated directly in the alleged constitutional violation. *See Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005); *see also Harper*, 400 F.3d at 1062 (each defendant must violate plaintiff's constitutional rights).

Nevertheless, viewing the facts in a light most favorable to Drain, he has set forth evidence creating a genuine issue of material fact that three of the police officers may have engaged in an unlawful strip-search when executing the search warrant on October 12, 2004. Defendants' argument that Drain's self-serving testimony cannot create a genuine issue of material fact does not save the day because testimony, by its very nature, is often self-serving. *See Wilson v. McRae's, Inc..* 413 F.3d 692, 694 (7th Cir. 2005) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial.").  Indeed, there is no rule of evidence requiring the exclusion of evidence solely on the grounds that it is self-serving.  *See Maher v. City of Chicago,* 406 F.Supp.2d 1006, 1014 (N.D. Ill. 2006).  As such, the Court denies Defendants' summary judgment motion as to Count III of the Amended Complaint.

## IV.    Count IV – Due Process Claim

In Count IV of his Amended Complaint, Drain brings a due process claim alleging that Defendant police officers deprived him of fair criminal proceedings by failing to disclose

exculpatory evidence, submitting false charges in the criminal complaints, submitting false police reports, and otherwise denying him a fair trial.  (Amend. Compl. ¶¶ 30, 31.)  In other words, Drain contends that the police officers violated his due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  In *Brady*, "the Supreme Court held that the right to due process and a fair trial requires that the prosecutor turn over to the defense all potentially exculpatory evidence.  That obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution."  *Harris v. Kuba,* ___ F.3d ___, 2007 WL 1452573, at *3 (7th Cir. May 18, 2007); *see also Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir. 2001).  As the Seventh Circuit explained in *Newsome*:

> If officers are not candid with prosecutors, then the prosecutors' decisions – although vital to the causal chain in a but-for sense – are not the important locus of action.  Pressure must be brought to bear elsewhere.  Prosecutors kept in the dark by the police (and not negligent in failing to hire other persons to investigate the police) won't improve their performance with or without legal liability for their conduct.  Requiring culpable officers to pay damages to the victims of their actions, however, holds out promise of both deterring and remediating violations of the Constitution.

*Id.* at 752.  The *Newsome* decision also indicates that such due process claims may be brought even if the prosecutors drop the charges against a defendant.  *Id.* at 752-53 (citing *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Cir. 1988)).  In a recent opinion, the Seventh Circuit described the relevant claim in *Jones* as a "claim against officers who allegedly fabricated evidence and concealed exculpatory evidence to go forward."  *Wallace v. City of Chicago,* 440 F.3d 421, 429 (7th Cir. 2006); *see also Gauger v. Hendle,* 349 F.3d 354, 358 (7th Cir. 2003) *rev'd on other grounds Wallace v. City of Chicago,* 440 F.3d 421 (7th Cir. 2006) ("if police falsify their reports in a successful effort to persuade the prosecutors to prosecute a suspect, they

have violated" [defendant's] civil rights.").

Drain concedes that Keyes is entitled to absolute immunity to the extent that his due process claim concerns Keyes' testimony at the preliminary hearing. *See Ienco v. City of Chicago,* 286 F.3d 994, 1000 (7th Cir. 2002). Drain contends there was more "bad conduct" involved than just the preliminary hearing testimony, including Defendants' failure to disclose exculpatory evidence, the submission of false charges as contained in the criminal complaints, and the submission of false police reports. Drain, however, has not factually supported his claim that Defendants failed to disclose exculpatory evidence to the Cook County Assistant States' Attorneys or that any of the police officers submitted false charges. In fact, Drain never specifies what exculpatory evidence Defendants withheld – either in his response brief or sur-reply – nor does he explain his false charges allegations.

The only "bad conduct" remaining concerns Keyes' allegedly false police reports. The evidence in the record reveals that Keyes was the only Defendant police officer who filed any police reports concerning Drain's arrest. (*See* Defs.' Stmt. Facts ¶ 63.) As such, the Court dismisses the other Defendant police officers from Count IV because Drain has not presented evidence creating a genuine issue of material fact that the other officers caused or participated in the alleged due process violations. *See Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006) (defendant must be personally responsible for deprivation of constitutional right).

## V.     Count V – Malicious Prosecution

In the last count of his Amended Complaint, Drain brings a malicious prosecution claim under Illinois law against the individual officers and a claim of respondeat superior against the City of Harvey. (Amend. Compl. ¶¶ 34-40.) To establish a claim for malicious prosecution

under Illinois law, Drain must show: (1) Defendants commenced or continued a criminal or civil judicial proceeding; (2) the judicial proceeding was terminated in his favor; (3) there was no probable cause to arrest him; (4) malice; and (5) damages. *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 921-22 (7th Cir. 2001) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 512, 215 Ill.Dec. 98, 662 N.E.2d 1238 (Ill. 1996)); *see also Ross v. Mauro Chevrolet,* 369 Ill.App.3d 794, 801, 308 Ill.Dec. 248, 861 N.E.2d 313 (Ill. 2006). A plaintiff must show each one of these elements to establish a malicious prosecution claim. *Swick,* 169 Ill.2d at 512. Moreover, "[i]n regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Id.*

Here, the parties dispute whether the criminal proceedings against Drain were terminated in his favor under the second element of a malicious prosecution claim. Specifically, Defendants contend that because *nolle prosequi* may only serve as a favorable termination if there is evidence in the record that the proceeding was terminated based on Drain's innocence, Drain's malicious prosecution claim must fail. *See id.* The Court agrees.

In support of their argument, Defendants rely on the Assistant States' Attorney's affidavit in which she averred that after evaluating Drain's case, she believed that the State could not sustain its burden of proving the case against Drain beyond a reasonable doubt and that her decision to *nolle prosequi* Drain's case did not reflect an opinion that Drain was innocent. (Defs.' Stmt. Facts ¶ 73; Ex. V, Coppelson Aff. ¶ 5.) Based on this evidence, Drain has failed to establish that the State terminated the criminal proceedings against him because he was innocent. Thus, Drain's malicious prosecution claim fails and the Court grants Defendants' summary

judgment motion as to Count V of the Amended Complaint.

Finally, because Drain cannot maintain a malicious prosecution claim against the individual defendants, the City of Harvey cannot be liable under the theory of respondeat superior. *See Ross v. Mauro Chevrolet,* 369 Ill.App.3d at 802-03 (claim against City based on respondeat superior was moot because individual officers had probable cause to arrest plaintiff in malicious prosecution case); *see also* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Accordingly, the Court dismisses the City of Harvey from this lawsuit.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Joint Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Dated:  June 19, 2007

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**